UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY H.,<br><br>                   Plaintiff,<br><br>v.<br><br>Andrew M. SAUL, Commissioner of Social Security,<br><br>                   Defendant. | Case No.: 3:19-cv-2446-AGS<br><br>**ORDER ON SUMMARY-JUDGMENT MOTIONS (ECF 15 & 18)** |

This case turns on the meaning of "hazards." A judge denied plaintiff's Social Security disability-benefits application, concluding that he could still work as an electronics technician, but that he must avoid "hazards . . . such as unprotected heights and/or dangerous machinery." But the Labor Department defines "hazards" as including "electrical shock," and plaintiff argues that he cannot resume his electronics trade without encountering that danger. The government responds that the judge merely restricted plaintiff from certain hazards: "unprotected heights and/or dangerous machinery." This Court must decide which reading prevails.

## BACKGROUND

In 1989 and 2001, plaintiff Barry H. was involved in accidents that left him with back, neck, and shoulder issues. (AR 23, 44, 52, 254.) He returned to his work as an electronics technician but was laid off in 2015. (AR 23-24, 254.) The next year he sought disability benefits due to worsening pain. (AR 17, 25, 254.)

An Administrative Law Judge confirmed that Barry had severe "degenerative disc disease of the cervical and lumbar spine." (AR 20.) Among other things, the ALJ found that Barry was restricted to "light work," that he couldn't "climb ladders, ropes, and scaffolds," and that he "must avoid concentrated exposure to hazards in the workplace such as unprotected heights and/or dangerous machinery." (AR 22, 24.)

With these limitations in mind, the ALJ turned to a vocational expert. The expert testified that—even with the proposed hazards restriction—Barry could do "his past work as it is generally performed in the national economy." (AR 26, 55-56.) The expert further testified that his opinion was consistent with the description of an electronics technician in the Labor Department's *Dictionary of Occupational Titles*, a compendium of American vocational data and requirements. (AR 55-56.) So the ALJ determined that Barry could resume his electronics-technician job with some limitations. (AR 25-26.) The ALJ then denied Barry's disability-benefits application and never ascertained whether he could do other jobs. (AR 26.)

## STANDARD OF REVIEW

The Social Security Administration's "denial of benefits" may be set aside "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *see also* 42 U.S.C. § 405(g). When "the evidence is susceptible to more than one rational interpretation," a court must defer to the ALJ. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2008) (citation omitted). Even when the ALJ errs, "we must affirm if the error is harmless." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015).

## DISCUSSION

Barry contends that the vocational expert's testimony contradicted the *Dictionary of Occupational Titles* and that the ALJ failed to address the discrepancy.

**A.    The *Dictionary* and the Vocational Expert's Testimony**

In its disability determinations, the "Social Security Administration relies primarily on the *Dictionary of Occupational Titles* for information about the requirements of work in the national economy." *Buck v. Berryhill*, 869 F.3d 1040, 1051 n.3 (9th Cir. 2017). Whenever a vocational expert's testimony is in "obvious or apparent" conflict with the *Dictionary*, the ALJ must "sua sponte investigate and resolve the conflict." *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020). To decide whether such a conflict exists here, the Court must first determine what the ALJ meant by the term "hazards."

### 1. *Hazards*

A supplement to the *Dictionary* defines "hazards" to include "moving mechanical parts of equipment, tools, or machinery; *electrical shock*; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." Appendix D: Environmental Conditions, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (emphasis added). This definition was also adopted by Social Security Ruling 96-9P. *See* SSR 96-9P, 1996 WL 374185, at *9 (Jul. 2, 1996). And courts routinely rely on this definition in Social Security cases analyzing "hazards." *See, e.g.*, *French v. Berryhill*, No. EDCV 17-0566-KS, 2018 WL 1322106, at *8 (C.D. Cal. Mar. 13, 2018) (referring to Social Security Ruling 96-9P as "the [Social Security] Commissioner's own relevant definition of 'hazards'"); *Novoa v. Colvin*, No. CV 13-00219-MAN, 2014 WL 3854369, at *7-8 (C.D. Cal. Aug. 6, 2014) (relying on this same definition when the "ALJ did not expand upon his definition of 'hazard'"); *Cranfill v. Colvin*, No. 1:10CV925, 2013 WL 1736597, at *8 (M.D.N.C. Apr. 9, 2013) (using Social Security Ruling 96–9p "to define the term 'hazardous'").

On the other hand, the government maintains that the ALJ did not use the term in its general sense, but instead "identified specific hazards . . . that pertained to Plaintiff." (ECF 18, at 5.) Barry disagrees, arguing that the phrase "such as" signals that the two specified hazards were "*not* an all-exhaustive list." (ECF 19, at 6 (emphasis added).)

Courts have confronted this "such as" debate before. For example, in *Eddie v. Berryhill*, the ALJ restricted claimant from "concentrated exposure to . . . hazards *such as* dangerous, moving machinery." No. 5:16-CV-801-D, 2017 WL 4002147, at *7 (E.D.N.C. Aug. 24, 2017) (emphasis added), *adopted*, 2017 WL 3995813 (E.D.N.C. Sept. 11, 2017). As here, the government argued, "[H]ad the ALJ meant 'all hazards,' he would have said so" and thus "the use of 'such as' was meant to limit the types of hazards to dangerous, moving machinery." *Id*. Relying on Social Security Ruling 96-9P, the *Eddie* claimant insisted on the full definition of "hazards," which covers "exposure to toxic, caustic chemicals." *Id*. The court sided with claimant because it wasn't "evident from the ALJ's

decision" why he would place limits on the hazard of "dangerous, moving machinery, but not the other hazards." *Id*. And the court noted that "if the ALJ only intended to limit Claimant's exposure to dangerous, moving machinery, there was no reason to use the broader term hazards." *Id*.

Other courts considering the "such as" issue agree with *Eddie*. *See Alexey M. K. v. Saul*, No. 18-CV-03149-TSH, 2019 WL 3772189, at *8-9 (N.D. Cal. Aug. 12, 2019) (finding that "hazards such as unprotected heights and moving machinery" included "exposure to toxic, caustic chemicals"); *Vickers v. Colvin*, No. EDCV 12-1445 AJW, 2013 WL 3071257, at *6 (C.D. Cal. June 18, 2013) (using the full Social Security definition to analyze "hazards such as machinery and heights"); *Peterson v. Astrue*, No. CIV. 10-138-JE, 2011 WL 1131495, at *4-5 (D. Or. Mar. 2, 2011) (same), *adopted*, 2011 WL 1114183 (D. Or. Mar. 28, 2011); *cf. Cephas v. Colvin*, No. CV 15-1121-RGA, 2017 WL 384695, at *4, 6 (D. Del. Jan. 26, 2017) (noting that the ALJ explicitly clarified a more limited "hazards" definition by writing "hazards, defined as heights and moving machinery" and that the ALJ spelled out that specific definition for the vocational expert).

Barry's case echoes *Eddie*, too. Under the government's reading, six words in the hazards restriction (italicized here for emphasis) serve no purpose: "avoid concentrated exposure to *hazards in the workplace such as* unprotected heights and/or dangerous machinery." (AR 22.) Put another way, "if the ALJ only intended to limit Claimant's exposure to" two dangers, "there was no reason to use the broader term hazards." *See Eddie*, 2017 WL 4002147, at *7. Also, the ALJ's hazards restriction was based on "[c]laimant's diagnosis of degenerative disc disease, along with his report of pain, radiculopathy and his unsubstantiated complaint of vertigo."[1] (AR 24.) This wide-ranging rationale does not explain why the ALJ would restrict exposure only to heights and

---

[1] The government would confine the ALJ's rationale for this restriction to Barry's "radiculopathy (nerve pain) and claims of vertigo." (ECF 18, at 4.) This reading would again require selectively ignoring parts of the ALJ's quoted language. (*See* AR 24.)

machinery, while excluding electrical shocks. Thus, the Court concludes that the ALJ wanted claimant "to avoid concentrated exposure to *any* hazards" and that heights and machinery were "but [two] example[s]." *See Eddie*, 2017 WL 4002147, at *7 (emphasis added). So Barry's hazards restriction includes avoiding electrical shocks.

### 2. *Vocational Expert's Testimony*

This electrical-shocks restriction brings into sharp relief the conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles*. According to the *Dictionary*, an electronics technician is exposed to electric shock "[o]ccasionally" or "up to 1/3 of the time." 003.161-014 Electronics Technician, *Dictionary of Occupational Titles*. Although Barry must avoid such shocks, the expert testified that Barry could still work as an electronics technician as defined in the *Dictionary*. (*See* AR 55-56.) This is an obvious—or at least apparent—contradiction, which triggered "the ALJ's duty to develop the record" and "resolve the conflict." *See Ford*, 950 F.3d at 1160. The ALJ erred "in failing to reconcile this apparent conflict." *Zavalin*, 778 F.3d at 847.

### B. Harmless-Error Review

Is this error harmless? "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). In Social Security appeals, claimants must therefore show that any errors raise a "substantial likelihood of prejudice." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). But "[i]f prejudice is obvious," claimant "need not demonstrate anything further." *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 969 (9th Cir. 2015).

The prejudice is obvious. Absent the error, the ALJ likely would have gone on to see if Barry could perform other jobs. That inquiry might easily have led to a disability finding. Yet neither the ALJ nor the vocational expert ever reached this issue. (*See* AR 54-57.) If the ALJ had found that Barry tolerates medium or heavy work, perhaps we could assume that Barry could do other jobs, rendering the error here harmless. The ALJ instead decided that Barry is limited to "light work" with several other restrictions. (AR 22.) Given his advanced age—Barry was 65 on the date last insured (AR 17, 61)—these limitations

cast significant doubt on his general employability. *See, e.g.*, *Maxwell v. Saul*, 971 F.3d 1128, 1131 (9th Cir. 2020) (holding that claimants must be found "disabled" if they are at least age 55, restricted to "light work," cannot perform their "past relevant work," and lack readily transferable skills to a "*significant range* of . . . work").

## C. Remedy

Barry seeks an immediate payment of benefits. (ECF 15-1, at 6.) When "the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (citation omitted). But "[r]emand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Id.* In this case, the ALJ never inquired if Barry had "transferrable skills" or whether "those skills are readily transferrable to a significant range of work." *See Walker-Earnest v. Comm'r of Soc. Sec. Admin.*, No. CV-16-00642-TUC-EJM, 2017 WL 4675523, at *7 n.3 (D. Ariz. Oct. 18, 2017). This case is remanded to answer those questions, which will resolve whether Barry is disabled.

## CONCLUSION

Thus, plaintiff Barry's summary-judgment motion is granted in part, and defendant's cross-motion for summary judgment is denied. The case is remanded for further proceedings.

**REVERSED and REMANDED.**

Dated: March 29, 2021

Hon. Andrew G. Schopler
United States Magistrate Judge